BONNIOT<br>*v.*<br>FUENTES.

---

## The Catholic Society *v.* The City of New Orleans.

*Where taxes, illegally assessed, have been paid through error, they may be recovered back.*

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Semmes & Edwards*, for plaintiff. *Wolfe*, for defendant and appellant.

VOORHIES, J. The plaintiff claims the reimbursement of the sum of $756 25, alleged to have been paid in error for municipal taxes on its property which was exempted from taxation.

The admissions in the record are: that the Catholic Society of Religious and Literary Education, was incorporated on the 19th January, 1848; that the object of its creation was the religious and literary education of youth; that since its incorporation it has been the proprietor of the lots of ground and buildings, which have ever since been used exclusively by it as school houses for the purpose of education, except a part thereof, which is used as a public chapel, dedicated exclusively to public worship; that said school houses have always been frequented since their establishment by a large number of youth attending the schools, superintended by the agents of the society; that said chapel is and has ever been open to the public at large, though the Roman Catholic form of worship is and has ever been used therein; that the plaintiff paid as general annual municipal taxes laid on said property for the years 1849 and 1850, the sum of $756 25, under the impression that said taxes were legally due, and that the payment thereof could have been legally coerced; that but for said belief and impression the plaintiff would never have paid the same; that said taxes were not paid under any immediate threats of legal coercion, though the officers of said municipality represented to the plaintiff that said taxes were lawful and could be lawfully collected; and that the plain-

CATHOLIC SOCIETY  tiff never discovered (in the opinion of its counsel) that said taxes could not
*v.*
NEW ORLEANS.  have been lawfully collected by process of law until a few months before the
institution of this suit.

The power to lay and collect taxes was delegated to the city by its act of
incorporation passed in 1805. The Act of the 27th March, 1813, declares that
"no houses or lands, no church or other buildings dedicated to Divine worship,
nor any lots whereon are erected public buildings dedicated to education, shall
be liable to any tax on account of any law of this State." It is clear un-
der this statute that the chapel was exempted from taxation. By the Act
of the 3d of May, 1847, entitled "An Act to provide a revenue for the sup-
port of the government of the State," it is declared that the following property
shall be exempted from taxation, viz: "All colleges and school houses and
other buildings for the purposes of education, with their furniture, apparatus
and all other equipments, and the lots thereto appurtenant and used therewith,
so long as the same shall be used for that purpose." If this Act stood alone,
it might not be applicable to taxes imposed by the city of New Orleans.
Formerly the city appointed its own assessors for the purpose of assessing pro-
perty subject to taxation within its corporate limits. By the Act of the 6th
March, 1840, entitled "An Act to organize a Board of Assessors for the parish
of Orleans," it is provided that the board thus created shall furnish "a cer-
tified copy of the assessment rolls of the parish of Orleans to the treasurer of
each municipality, and the council of each of said municipalities shall no more
have authority of appointing assessors of taxes, but shall use the assessment
rolls furnished them by the Board of Assessors, agreeably to this section, for
laying and collecting corporation taxes within the incorporated limits of said
municipalities." Since this enactment, the State assessment rolls have always
been used by the city for the purpose of laying municipal taxes. Those in
question were laid, by virtue of resolutions of the municipality, "on the
assessed value of the property within its limits according to the tableaux of
the State Assessors." It is therefore obvious that the municipalities had no
legal authority to lay taxes on any other property than that which was so
assessed on the State assessment rolls. The sections 18 and 20 of the Act of
1847, made it the duty of the State Assessors to ascertain "all the taxable
property only," and to assess "all real and personal estate liable to taxation."
Property exempted from taxation could not therefore be legally assessed. The
assessment under the Act of 1847 then constituted the basis of the State and
city taxes; and if illegal in any respect as to the State taxes, it must be con-
sidered equally so as to the city taxes. The law considers the assessment as
standing in lieu of a judgment, by virtue of which the collector has authority
to demand and enforce the payment of the taxes, and has also the effect of an
execution issued on a judgment. It is therefore obvious that the legality of
taxes based on the copies of the assessment thus delivered to each of the muni-
cipalities, could be contested on the ground of exemption. 7 L. 50. 4 Ann.
252.

It is evident that the taxes in this case were paid through error of law.
"Error of law can never be alleged as the means of acquiring, though it may
be invoked as the means of preventing a loss or of receiving back what has
been given or paid under such error." C. C., 1840, sec. 3.

The rule laid down by Toullier is, "that the same presumption which throws
on the plaintiff in repetition the proof that what he has paid was not due,

throws on his opponent, when this fact has once been proved, the burthen of proving that the payment was made knowingly and with the knowledge that what was paid was not due." Toul. sec. 70, b. 91, 92, 93.

"He who has paid through mistake, believing himself a debtor, may reclaim what he has paid. To acquire this right, it is necessary that the thing be not due in any manner either civilly or naturally. C. C., art. 2280–1. He who pays through error what he does not owe, has an action for the repetition of what he has paid, unless there was a natural obligation to make such payment." Applying these rules of law to the circumstances of this case, it is clear the plaintiff is entitled to recover. The exemption itself, whether founded in good reason or sound public policy or not, repels the idea of any thing like a natural obligation on the part of the plaintiff for the payment of the taxes. If these institutions merited the protection and encouragement of the State government, it is difficult to perceive how any natural obligation could possibly exist on their part for the payment of taxes from which they are exempted. The cases relied on in 9 R., 324, and 7 R., 532, presented facts entirely different from those in the present case.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed with costs.